UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
:
MICHAEL THOMAS, ROMELO RIVERA, :
and VERNIECE CARMONA, Individually :
and on behalf of all other persons similarly :
situated, :
:
                    Plaintiffs, :   No. 1:21-cv-01325 (BMC)
:
   -against- :
:
AMAZON.COM, INC., :
:
                    Defendant. :
------------------------------------------------------------x

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO DISMISS**

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................ 1

FACTUAL AND PROCEDURAL BACKGROUND............................................................ 2

STANDARD OF REVIEW ................................................................................................... 4

ARGUMENT ......................................................................................................................... 4

    I.    TWO DIFFERENT EXCEPTIONS TO NEW YORK CITY'S PROHIBITION ON PRE-EMPLOYMENT MARIJUANA TESTING APPLY TO THE POSITIONS THAT PLAINTIFFS SOUGHT .......................... 4

        A.    The Exception for Safety-Sensitive Positions Applies to Sortation Associates ................................................................................................ 6

        B.    The Heavy Machinery Exception Also Applies to Sortation Associates ................................................................................................ 9

    II.    PLAINTIFFS CANNOT REPRESENT THE PUTATIVE CLASS .................... 12

CONCLUSION..................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Ahmed v. Town of Oyster Bay*,
   7 F. Supp. 3d 245 (E.D.N.Y. 2014) ................................................................................11

*Apotex Inc. v. Acorda Therapeutics, Inc.*,
   823 F.3d 51 (2d Cir. 2016) ..................................................................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................................4

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................................4

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002) ................................................................................................3

*Cortec Indus., Inc. v. Sum Holding L.P.*,
   949 F.2d 42 (2d Cir. 1991) ..................................................................................................3

*Glob. Network Commc'ns, Inc. v. City of New York*,
   458 F.3d 150 (2d Cir. 2006) ..........................................................................................3, 11

*King v. City of New York*,
   2014 WL 4954621 (E.D.N.Y. Sept. 30, 2014) ...................................................................3

*Lynch v. Suffolk Cty. Police Dep't Inc.*,
   2007 WL 9753042 (E.D.N.Y. July 31, 2007) ..................................................................11

*Nat'l Treasury Emps. Union v. Hallett*,
   776 F. Supp. 680 (E.D.N.Y. 1991) .....................................................................................6

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) ..........................................................................................................12

*Republic of Iraq v. Beaty*,
   556 U.S. 848 (2009) ............................................................................................................9

*Vacca v. Hartz Mountain Corp.*,
   2010 WL 1270193 (E.D.N.Y. Mar. 30, 2010) ....................................................................3

*W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*,
   549 F.3d 100 (2d Cir. 2008) ..............................................................................................12

# TABLE OF AUTHORITIES
(continued)

Page(s)

*Warth v. Seldin*,
 422 U.S. 490 (1975)............................................................................................................12

**STATUTES**

N.Y.C. Admin. Code § 8–107(31)(a) .........................................................................................5

N.Y.C. Admin. Code § 8–107(31)(b)(1)(E) ...............................................................................5

**OTHER AUTHORITIES**

Occupational Safety and Health Administration, OSHA 3170-O2R, Safeguarding Equipment and Protecting Employees From Amputations (2007), *available at* https://www.osha.gov/sites/default/files/publications/osha3170.pdf......................................10

Occupational Safety and Health Administration, OSHA 3220-10N, Warehousing (2004), *available at* https://www.osha.gov/sites/default/files/publications/3220_Warehouse.pdf....7, 8

**REGULATIONS**

29 C.F.R. § 1910.178(l) ..............................................................................................................8

60 Fed. Reg. 13782 (March 14, 1995) ........................................................................................8

63 Fed. Reg. 66238 (December 1, 1998) ....................................................................................8

N.Y. Comp. Codes R. & Regs. tit. 12, § 23-9.3 .......................................................................10

N.Y. Comp. Codes R. & Regs. tit. 12, § 23-9.8 .......................................................................10

Rules of the City of New York, tit. 47, § 2–07(a)(2).................................................................9

Rules of the City of New York, tit. 47, § 2–07(a)(6).............................................................6, 8

Rules of the City of New York, tit. 47 § 2-07(a)(1)-(6)............................................................5

**INTRODUCTION**

Plaintiffs Michael Thomas, Romelo Rivera, and Verniece Carmona (collectively, "Plaintiffs") are marijuana users who wanted to work as Sortation Associates on the floor of Amazon.com, Inc. ("Amazon")'s Staten Island, New York fulfillment center. The Staten Island facility is a fast-paced, high-traffic environment that requires associates to be attentive and careful to avoid injuries to themselves and others, involves working in close proximity to heavy machinery and moving conveyor belts, and requires Sortation Associates to be able to operate forklifts and other machinery capable of moving sizeable loads. The dangers posed by an impaired person crisscrossing with hundreds of other associates around moving machinery on the floor of an active and massive facility—the size of 15 football fields—would be grave. Consequently, Amazon tested Plaintiffs for marijuana use. Each of the Plaintiffs admits they tested positive. They now claim Amazon's safety precautions are unlawful under New York City law, and they seek to represent a putative class of all marijuana users who tested positive for marijuana and were denied employment with Amazon.

Plaintiffs' claims are based on a fundamental misunderstanding of the law, and a disregard for a Sortation Associate's basic duties. New York City does not prohibit employers from drug testing prospective employees for safety reasons, and the positions Plaintiffs applied for required them to actively navigate many safety hazards. The face of the Amended Complaint alleges that Sortation Associates are required to work on and around moving conveyor belts; the job description (which the Amended Complaint incorporates by reference) reveals that their job duties also include working in close proximity to moving machinery in a physically strenuous environment and operating forklifts when asked to do so. Drug testing applicants for these positions was perfectly consistent with the law and common sense. Because this is revealed

from the face of the Amended Complaint, and the job description it incorporates by reference, Amazon's motion to dismiss should be granted with prejudice.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 12, 2021, Plaintiff Michael Thomas filed a Class Action Complaint against Amazon, alleging that he was denied employment as a Sortation Associate on the basis of a positive marijuana test result. Dkt. 1. On April 20, 2021, Thomas filed a First Amended Class Action Complaint (the "Amended Complaint") adding Romelo Rivera and Verniece Carmona as named plaintiffs. FAC ¶ 1. The Amended Complaint seeks relief on behalf of these Plaintiffs and all persons who, after May 10, 2020, applied for "Non-Exempt Positions with Amazon in the City of New York, were required to submit to pre-employment drug test [sic] for marijuana, tested positive for marijuana, and were denied employment because of the drug test results." FAC ¶ 59.

As alleged in the Amended Complaint, all three Plaintiffs applied to work as Sortation Associates in Amazon's Staten Island, New York fulfillment center. FAC ¶¶ 17, 31, 41. All three were, as part of the job application process, required to take a drug test. FAC ¶¶ 21, 33, 44. All three failed, testing positive for marijuana. FAC ¶¶ 27, 38, 48. Plaintiffs allege that their positive marijuana test results were the reason Amazon did not hire them to work as Sortation Associates. FAC ¶¶ 28, 39, 49.

In describing the job duties of a Sortation Associate, the Amended Complaint couples its allegations with explicit references to Amazon's job description for the position. The Amended Complaint alleges that a Sortation Associate is responsible "for packaging, sorting, scanning and placing items on the conveyor belt," "inspect[ing] packages for defects," and repeatedly lifting and moving packages "up to 50 pounds." FAC ¶ 13–14, 19. The Sortation Associate position is physically strenuous and requires the Sortation Associate to safely perform all of this work while

2

actively walking around a busy facility for "up to 6 hours" a day. *Id.* at 14. The actual job description—which is referenced in Paragraphs 13–15 of the Amended Complaint but not attached to the Amended Complaint—confirms this. Levin Declaration, Ex. A, Job Description. The job description states that the work is performed in a "fast-paced environment." *Id*. Sortation Associates "work around moving machines," "load conveyor belts," and must "be able to . . . use carts, dollies, hand trucks, forklifts, order pickers, and other gear to move stuff around" the facility. As part of the job, Sortation Associates must take a variety of safety precautions, including wearing "protective gear," such as a safety vest, and participating in "safety exercises." *Id.*[1] Sortation associates also must be able to perform their duties on secure platforms that can be "up to 40 feet" high. *Id.*

Plaintiffs assert only one cause of action. They claim that Amazon violated New York City's prohibition on pre-employment marijuana testing when it required them to submit to a drug test for marijuana as part of their job application. FAC ¶ 69. Ignoring the contrary language in the job description and the exception language in the City law, Plaintiffs allege that Amazon was not entitled to conduct this testing because the "job description does not state that it

---

[1] Because the Amended Complaint incorporates the job description by reference, it is appropriate for the Court to consider the job description on a motion to dismiss. *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) ("[T]he complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference."). "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotations omitted). Doing so prevents "plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006); *see also Vacca v. Hartz Mountain Corp.,* 2010 WL 1270193, at *3 (E.D.N.Y. Mar. 30, 2010) (taking judicial notice of document that "both parties ma[de] repeated references to"); *King v. City of New York,* 2014 WL 4954621, at *9 (E.D.N.Y. Sept. 30, 2014) (taking judicial notice of documents that Plaintiff "relied on . . . in drafting his Complaint" in ruling on a motion to dismiss).

is a mandatory requirement for the Sortation Associate to operate heavy machinery or equipment." FAC ¶ 15.

## STANDARD OF REVIEW

A court must dismiss a complaint under Rule 12(b)(6) if the allegations in the complaint are not "plausible on [their] face" or do not allege sufficient facts to satisfy the relevant legal standard. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 558-59, 570 (2007). "A plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). In making this determination, the Court must "draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

## ARGUMENT

Plaintiffs' claims are foreclosed as a matter of law because the allegations in the Amended Complaint, as well as the job description it incorporates by reference, make clear that the exceptions to New York City's prohibition on pre-employment marijuana testing apply here. Specifically, the exceptions for jobs that require the regular operation of heavy machinery, and for jobs where an employee's impairment would pose an immediate risk of death or serious physical harm, both apply to the position of Sortation Associate. Without viable claims of their own, Plaintiffs cannot represent any putative class members, and the Amended Complaint therefore should be dismissed in its entirety, with prejudice.

## I. TWO DIFFERENT EXCEPTIONS TO NEW YORK CITY'S PROHIBITION ON PRE-EMPLOYMENT MARIJUANA TESTING APPLY TO THE POSITIONS THAT PLAINTIFFS SOUGHT

The New York City Administrative Code makes it an unlawful discriminatory practice "for an employer . . . to require a prospective employee to submit to testing for the presence of any tetrahydrocannabinols or marijuana in such prospective employee's system as a condition of

4

employment." N.Y.C. Admin. Code § 8–107(31)(a).  But there are exceptions.  For example, an employer may conduct a pre-employment marijuana test where a person is applying to work "[i]n any position with the potential to significantly impact the health or safety of employees or members of the public, as determined by . . . [the New York City Commission on Human Rights]." *Id*. at § 8–107(31)(b)(1)(E).

The New York City Commission on Human Rights (NYCCHR) promulgated regulations specifying various types of safety-sensitive positions that are exempt from the prohibition on pre-employment marijuana testing, including where:

- "The position requires that an employee regularly, or within one week of beginning employment, work on an active construction site";
- "**The position requires that an employee regularly operate heavy machinery**";
- "The position requires that an employee regularly work on or near power or gas utility lines";
- "The position requires that an employee operate a motor vehicle on most work shifts";
- "The position requires work relating to fueling an aircraft, providing information regarding aircraft weight and balance, or maintaining or operating aircraft support equipment, or";
- "**Impairment would interfere with the employee's ability to take adequate care in the carrying out of his or her job duties and would pose an immediate risk of death or serious physical harm to the employee or to other people.**"

Rules of the City of New York, tit. 47 § 2-07(a)(1)-(6) (emphases added).

The two of these safety exceptions in boldface type apply to the position of Sortation Associate.  First, while Amazon takes extraordinary effort to ensure the safety and well-being of

5

its associates, the fulfillment center in which Plaintiffs would have worked is a type of environment encompassed by the NYCCHR's exception for positions where the *impairment* of an employee would "pose an immediate risk of death or serious physical harm." Second, as is made clear by both Plaintiffs' allegations as well as the job description incorporated by reference into the Amended Complaint, Sortation Associates are expected, as a regular part of their jobs, to be able to operate heavy machinery, such as operating forklifts and loading moving conveyor belts.

### A. The Exception for Safety-Sensitive Positions Applies to Sortation Associates

The Sortation Associate position comes under the NYCCHR's regulation allowing pre-employment marijuana testing when "[i]mpairment would interfere with the employee's ability to take adequate care in the carrying out of his or her job duties and would pose an immediate risk of death or serious physical harm to the employee or to other people." Rules of the City of New York, tit. 47, § 2–07(a)(6).

The allegations in the Amended Complaint demonstrate that the work in an Amazon fulfillment center is active, physically strenuous, and carries an immediate risk of harm if not performed with attentiveness and due care such as in the case of an impaired associate. As the Amended Complaint alleges, Sortation Associates work on and around moving machinery, including "packaging, sorting, scanning and placing items on the conveyor belt." FAC ¶ 19. They also are required to "lift up to 50 pounds," and actively move loads and packages repeatedly across the fulfillment center floor throughout the day, for "up to six hours" at a time. FAC ¶ 14. The significant number of machines, people, and packages that a Sortation Associate has to repeatedly be mindful of while actively navigating the facility requires that the employee be attentive and not impaired. If associates are impaired in any way in such an environment, it is obvious that serious physical harm and injuries could occur. *See Nat'l Treasury Emps. Union v.*

*Hallett*, 776 F. Supp. 680, 692 (E.D.N.Y. 1991) ("The threat posed by a lapse of control or judgment by a drug-impaired forklift operator is so obvious as to require no elaboration. Suffice to say the threat is both immediate and severe.").

The job description incorporated by reference into the Amended Complaint confirms the various safety hazards Sortation Associates may encounter on the job. Sortation Associates "need to be able to . . . use carts, dollies, hand trucks, forklifts, order pickers, and other gear to move stuff around." Levin Declaration, Ex. A Job Description. They "work around moving machines" and "load conveyor belts and transport and stage deliveries to be picked up by drivers." *Id*. All of this work is performed in a "fast-paced environment." *Id*. Some of the work must be done "at a height of up to 40 feet." *Id.*

The job description also details the various precautions Sortation Associates must take to work safely in the fulfillment center. Sortation Associates are provided "protective gear" and are expected to "participate in safety exercises" and "share safety tips with co-workers." *Id*. They also must have the "ability to read and speak English for safety purposes," because an associate's inability to be attentive to verbal and written safety warnings would jeopardize safety. Moreover, the fulfillment center environment is filled with potential distractions, which, if associates are not alert and on their guard, can exacerbate safety risks. As the job description explains, temperatures in the facility can vary between 60 and 90 degrees Fahrenheit, and with all of the delivery trucks and heavy machinery in operation, the facility can be very noisy. *Id*.

As the U.S. Department of Labor's Occupational Safety and Health Administration ("OSHA") explains, warehouse work is hazardous work. *See* Levin Declaration, Ex. B, Occupational Safety and Health Administration, OSHA 3220-10N, Warehousing (2004),

*available at* https://www.osha.gov/sites/default/files/publications/3220_Warehouse.pdf.[2]

Further, some of the most common hazards in warehouses are caused by the improper use and operation of forklifts and conveyor belts, which can result in death or serious injury. *See id*. at 3–4; 29 C.F.R. § 1910.178(l); Powered Industrial Truck Operator Training, 63 Fed. Reg. 66238, 66243 (December 1, 1998). This equipment poses grave risks of death or physical injury not only to the workers operating it, but also to "workers such as warehousemen, materials handlers, laborers and pedestrians who work on or are present in the vicinity of powered industrial trucks." Powered Industrial Truck Operator Training, 60 Fed. Reg. 13782, 13799 (March 14, 1995). In short, workers who work both on, and around, warehouse equipment such as forklifts and conveyor belts must take special precautions and be alert to potential dangers.

Simply put, the face of the Amended Complaint demonstrates that Sortation Associates perform many safety-sensitive tasks, and do so in a fast-paced, hazardous environment where inattention or carelessness can result in serious physical harm or even death. The position is a type of job where "[i]mpairment would interfere with the employee's ability to take adequate care in the carrying out of his or her job duties and would pose an immediate risk of death or serious physical harm to the employee or to other people." Rules of the City of New York, tit. 47, § 2–07(a)(6). The Sortation Associate position is thus covered by the exception allowing pre-employment marijuana screening. *Id.*

To the extent Plaintiffs argue that this reading of the regulation applies the exception too broadly, such a contention is meritless. Both the regulatory exception, and the statutory

---

[2] As government publications the accuracy of which "cannot reasonably be questioned," OSHA guidance on workplace hazards is subject to judicial notice, and may be considered at the pleading stage. *See Apotex Inc. v. Acorda Therapeutics, Inc.*, 823 F.3d 51, 60 (2d Cir. 2016).

8

provision it is promulgated under, are written to provide the flexibility needed to address unforeseen situations. *See Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009) ("[T]he whole value of a generally phrased residual clause . . . is that it serves as a catchall for matters not specifically contemplated—known unknowns."). This is confirmed by the regulatory record, which shows that the NYCCHR proposed the exception after it received comments urging it to give employers the ability to adapt as needed to workplace hazards. *See* Levin Declaration, Ex. C, Comment from the Greater New York Hospital Association (January 8, 2020) ("[W]e urge you to avoid attempting to create an exhaustive listing of job titles. Rather, we suggest a non-exhaustive list combined with a set of principles that will provide guidance to employers in determining how to selectively and appropriately use preemployment testing for marijuana and THC in their discretion."). The flexibility built into the regulatory exception clearly encompasses a job such as Sortition Associate that is performed in a fast-paced, potentially hazardous environment.

**B. The Heavy Machinery Exception Also Applies to Sortation Associates**

Plaintiffs' claims should alternatively be dismissed because the Sortation Associate position qualifies for a separate exception: the position requires employees to "regularly operate heavy machinery." Rules of the City of New York, tit. 47, § 2–07(a)(2). The Amended Complaint, and the job description it incorporates by reference, demonstrate that Sortation Associates are expected to use and operate forklifts and conveyor belts as a regular part of their jobs. Consequently, Amazon was permitted to test Plaintiffs for marijuana use.

The Amended Complaint confirms Plaintiff Thomas was told that part of his job duties as a Sortation Associate would involve working on and around conveyor belts. FAC ¶ 19. This allegation, in and of itself, is sufficient to bring the position of Sortation Associate, as described in the Amended Complaint, within the scope of the heavy machinery exception. Although the

9

NYCCHR's regulations do not define the term "heavy machinery," other safety-related laws are instructive.

In particular, safety regulations for construction sites promulgated by New York State define the term "heavy equipment and machinery" to include both conveyor belts and forklifts. *See* N.Y. Comp. Codes R. & Regs. tit. 12, §§ 23-9.3, 23-9.8 (classifying "lift and fork trucks" and "conveyors" as "heavy equipment and machinery"). Further, like other kinds of large, moving mechanical equipment, improper use of a conveyor belt can cause serious physical harm. As OSHA has explained, "[a]mputations are among the most severe and disabling workplace injuries that often result in permanent disability," and "[t]hese injuries result from the use and care of machines such as saws, presses, *conveyors*, and bending, rolling or shaping machines." Levin Declaration, Ex. D, Occupational Safety and Health Administration, OSHA 3170-O2R, Safeguarding Equipment and Protecting Employees From Amputations (2007), *available at* https://www.osha.gov/sites/default/files/publications/osha3170.pdf (emphasis added). For example, if an associate is impaired or inattentive, his safety vest or another article of clothing could be caught in a conveyor belt, resulting in serious bodily injury. *See id*. at 27.

In addition to working on conveyor belts, Sortation Associates are required to be able to operate a forklift when asked. A Sortation Associate must be able to move loads and navigate the warehouse, which is why the job description requires a Sortation Associate to be capable of using "carts, dollies, hand trucks, forklifts, order pickers, and other gear to move stuff around." Levin Declaration, Ex. A, Job Description. Plaintiffs claim that the heavy machinery exception should not apply because the "job description does not state that it is a mandatory requirement for the Sortation Associate to operate machinery or heavy equipment." FAC ¶ 15. Plaintiff Rivera also claims that he briefly did some seasonal work for Amazon and was not asked to

operate "heavy equipment of any kind" during that short stint. FAC ¶ 30. But these allegations are directly contradicted by the actual job description, which clearly informs job applicants that they must be able to operate forklifts, among other types of equipment.

The incorporation-by-reference doctrine exists precisely to prevent Plaintiffs from engaging in such clever pleading tactics. *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 157 (2d Cir. 2006) (allowing court to consider incorporated documents to prevent "plaintiffs from generating complaints invulnerable to Rule 12(b)(6) simply by clever drafting."). The Court therefore should not accept these allegations as true. *See Lynch v. Suffolk Cty. Police Dep't Inc.*, 2007 WL 9753042, at *1 (E.D.N.Y. July 31, 2007) ("The allegations in the amended complaint are presumed to be true except where they are contradicted by the documents" the complaint incorporates by reference.) (Cogan, J.). Indeed, these allegations are even contradicted by the Amended Complaint itself, which acknowledges that Sortation Associates are required to use conveyor belts. FAC ¶ 19. That is yet another reason to wholly discount them. *See Ahmed v. Town of Oyster Bay*, 7 F. Supp. 3d 245, 249 (E.D.N.Y. 2014) ("[I]n analyzing the sufficiency of a complaint, a court need not accept as true pleadings that are contradicted either by statements in the complaint itself or by documents upon which its pleadings rely, or by facts of which the court may take judicial notice." (quotations omitted)).

Even accepting as true the allegation that Plaintiff Rivera never operated heavy equipment during the short, three-month period he worked as a Seasonal Sortation Associate, that says nothing about what he would have been directed to do over a longer period of time if he had been hired as a full-time associate. The job description makes clear that operating heavy machinery, such as a forklift, is a task full-time Sortation Associates are expected to be able to

do as a regular part of the job, and is something Plaintiffs may have been called upon to do at any point if they had been hired.

The heavy machinery exception to New York City's prohibition on pre-employment marijuana testing therefore applies to the position of Sortation Associate, due to their work on and around conveyor belts, and the expectation that they also be able to operate forklifts when needed to move loads. As a result, there was nothing unlawful about asking Plaintiffs to submit to pre-employment marijuana screening.

## II. PLAINTIFFS CANNOT REPRESENT THE PUTATIVE CLASS

As explained above, Plaintiffs' individual claims are foreclosed as a matter of law. Moreover, without valid individual claims, Plaintiffs cannot represent a putative class. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008) ("Unless [plaintiffs] can thus demonstrate the requisite case or controversy between themselves personally and [defendants], none may seek relief on behalf of himself or any other member of the class." (quoting *Warth v. Seldin*, 422 U.S. 490, 502 (1975))). The Amended Complaint should therefore be dismissed in its entirety, with prejudice.

## CONCLUSION

For these reasons, the Court should dismiss the Amended Complaint with prejudice.

Dated: May 27, 2021

                Respectfully submitted,

                /s/ *Gabrielle Levin*
                Gabrielle Levin
                GIBSON, DUNN & CRUTCHER LLP
                200 Park Avenue
                New York, NY 10166
                Tel.: (212) 351-3901
                glevin@gibsondunn.com

                Timothy Loose (*pro hac vice forthcoming*)
                GIBSON, DUNN & CRUTCHER LLP
                333 South Grand Avenue
                Los Angeles, CA 90071
                Tel.: (213) 229-7746
                tloose@gibsondunn.com

                *Attorneys for Defendant*