UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
                                                            :
MICHAEL THOMAS, ROMELO RIVERA,                              :
and VERNIECE CARMONA, Individually                          :  **MEMORANDUM DECISION**
and on behalf of all other persons similarly                :  **AND ORDER**
situated,                                                   :
                                                            :  21-cv-1325 (BMC)
                              Plaintiff,                    :
                                                            :
              - against -                                   :
                                                            :
AMAZON.COM, INC.,                                           :
                                                            :
                              Defendants.                   :
                                                            :
----------------------------------------------------------- X

**COGAN**, District Judge.

The City of New York has enacted a law prohibiting employers from testing prospective employees for marijuana use, based on the view that marijuana use should not disqualify a prospective employee. There are exceptions to the law, generally based on safety concerns relevant to the particular position for which the prospective employee is applying. Amazon withdrew its offer to hire the three plaintiffs in this case after they tested positive for marijuana, contending that the position for which they applied falls within the exceptions to the law. I agree, and therefore grant Amazon's motion to dismiss.

## BACKGROUND

Plaintiffs Verniece Carmona and Michael Thomas did not have any prior experience working for Amazon and applied to be warehouse workers, referred to by Amazon as "Sortation Associates," in October and November 2020, respectively. According to the job description, Sortation Associates "work around moving machines," "are on the move for their whole shift,"

"load conveyor belts," need to be able to "lift up to 49 pounds" and "use carts, dollies, hand trucks, forklifts, order pickers, and other gear to move stuff around."

Both applicants were interviewed and given offers of employment contingent on their ability to pass a drug screening test conducted by a third party. Amazon policy requires all prospective employees to pass that screening. Both Carmona and Thomas failed the drug test and had their conditional offers of employment revoked.

Plaintiff Romelo Rivera had previously worked for Amazon as a Seasonal Sortation Associate from October 2020 to January 2021. During this period, he used Amazon's conveyor belts but did not operate any other heavy equipment. After this job concluded, Rivera applied for a full time Sortation Associate position through Amazon's online portal. Like the other plaintiffs in this case, Rivera received a conditional offer that was subsequently rescinded after he too failed a drug test administered by a third party.

After Amazon revoked their conditional offers, plaintiffs brought this single-claim, putative class action alleging Amazon's policy violated N.Y.C. Admin. Code § 8-107(31), with federal jurisdiction based on the Class Action Fairness Act, 28 U.S.C. §§ 1711–1715 *et seq*. The New York City provision, found within the New York City Human Rights Law, makes it an unlawful discriminatory practice "to require a prospective employee to submit to testing for the presence of any tetrahydrocannabinols or marijuana in such prospective employee's system as a condition of employment."

Amazon argues that its action was lawful because its policy falls within two exceptions to Section 8-107(31)(a). These are outlined in 47 R.C.N.Y. § 2-07(a)(2) and (6). The exceptions state that an employer can require employees to pass a pre-employment screening for marijuana or tetrahydrocannabinols if "[t]he position requires that an employee regularly operate heavy

2

machinery," 47 R.C.N.Y. § 2-07(a)(2), or an "[i]mpairment [caused by marijuana use] would interfere with the employee's ability to take adequate care in the carrying out of his or her job duties and would pose an immediate risk of death or serious physical harm to the employee or to other people," 47 R.C.N.Y. § 2-07(a)(6).

## DISCUSSION

In a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court "must accept as true the factual allegations in the complaint, and draw all reasonable inferences in favor of the plaintiff." Bolt Elec., Inc. v. City of New York, 53 F.3d 465, 469 (2d Cir. 1995) (citations omitted). A court's review of a motion to dismiss is limited and "the issue is not whether a plaintiff will ultimately prevail but whether the claimant['s] allegation entitles him] to offer evidence to support the claims." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996). Courts must consider the complaint in its entirety, together with documents incorporated into the complaint by reference, and matters of which a court may take judicial notice. See 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2008).

Here, even after all of plaintiffs' allegations are accepted as true and all reasonable inferences drawn in their favor, see Staehr v. Hartford Fin. Sevs. Grp., Inc., 547 F.3d 406, 424 (2d Cir. 2008), this case cannot survive Amazon's motion to dismiss because the conveyor belts used by Amazon Sortation Associates qualify as heavy machinery and the Sortation Associate's job is exactly the type contemplated by the catch-all exception in Section 2-07(a)(6).

**I.  Determining Essential or Fundamental Job Functions**

Section 2-07(a) permits drug testing prospective employees for jobs that "require" the "regular" operation of heavy machinery or where "impairment would interfere with the employee's . . . job duties and would pose an immediate risk of death or serious physical harm to

3

the employee or [ ] other people."  By definition, "regularly" "required" responsibilities or "job duties" are "fundamental" to an occupation and not merely "marginal."  Stone v. City of Mount Vernon, 118 F.3d 92, 97 (2d Cir. 1997) (citing 29 C.F.R. § 1630.2(n)(1)).

A court determines which functions are essential or fundamental for a job by looking at an employer's written job description, the amount of time an employer spends performing the function, the consequences of not requiring the employee to perform the function, the work experience of past employees in the position, and the current work experience of employees in similar positions.  Cf. Sharp v. Abate, 887 F. Supp. 695, 699 (S.D.N.Y. 1995) (looking at how to define essential job functions for purposes of the ADA (citing 29 C.F.R. § 1630.2(n)(3))).  Thus, even though an employer's job description is sometimes the determinative factor in defining an employee's essential or fundamental duties, it is not the only one.  See Reville v. Niagara Frontier Transp. Auth., No. 04-cv-258, 2009 WL 5167645, at *8 (W.D.N.Y. Dec. 20, 2009) ("The employer's written job description, especially, is given substantial weight" in determining a job's essential functions) (internal citations and quotations omitted).

II.   **"Regularly Operating Heavy Machinery"**

Given that plaintiffs' claims focus on the nature of a Sortation Associate's responsibilities, the requirement that they be able to operate a forklift and load conveyor belts is incorporated into the complaint by reference.  See generally 5B Wright & Miller at § 1357. Amazon identifies two pieces of warehouse equipment it believes constitute "heavy machinery" – forklifts and conveyor belts.  It claims that Section 2-07(a)(2) applies because Sortation Associates are required to regularly use these qualifying pieces of equipment.

Section 2-07 was written to create exceptions to Section 8-107(31) based on the potential of a job to significantly impact the health or safety of impaired employees or members of the

4

public. The facts alleged in the complaint and the incorporated sections of the job description demonstrate that both forklifts and conveyor belts qualify as "heavy machinery," and although we must assume at this stage of the case, based on the allegations in the complaint, that forklifts are not regularly used by Sortation Associates, conveyor belts are.

### A. Forklifts

Neither party disputes that a forklift is a "heavy machine." Additionally, the job description for a Sortation Associate explicitly states that an individual in that role needs to "also be able to" use a forklift. However, merely requiring an applicant to "be able to" use a forklift does not demonstrate that Sortation Associates are "regularly" using this qualifying machine.

According to the complaint, plaintiff Rivera worked at Amazon as a Seasonal Sortation Associate from October 2020 to January 2021. During this time, he never operated a forklift. That makes it plausible that although the job designation requires the ability to operate a forklift, the actual performance of the job does not. Accepting plaintiffs' allegation as true and drawing every reasonable inference in plaintiffs' favor compels the conclusion that Amazon's forklift requirement was not an essential function of the Sortation Associate job. For purposes of a Rule 12(b)(6) motion, we must assume that the consequences of not requiring a Sortation Associate to have this skill is unlikely to meaningfully impact his responsibilities. See Abate, 887 F. Supp. at 699.

### B. Conveyor Belts

This same reasoning does not apply to the use of conveyor belts. This is because both sides also agree that conveyor belts are regularly used in the course of a Sortation Associate's work. On this issue, plaintiffs maintain that (1) conveyor belts are not "heavy machinery" as contemplated by Section 2-07(a)(2)'s exception; and (2) even if they did constitute such

5

machines, Sortation Associates do not "operate them" as required to qualify for the exception. I disagree.

New York City law, including Section 2-07(a)(2), does not define "heavy machinery." Thus, the Court looks to the term's common or general usage to determine if the conveyor belts used by Sortation Associates at the Staten Island facilities are heavy machines for purposes of Section 2-07(a)(2). See generally Order of R. Conductors v. Swan, 329 U.S. 520, 525 (1947).

In the context of construction, farming, and industrial manufacturing, there can be no doubt that conveyor belts qualify as heavy machinery.[1] New York State law defines "heavy machinery" as including conveyors for purposes of construction, demolition, and excavation. See 12 NYCRR §§ 23-9.3, 23-9.8 (classifying "lift and fork trucks" and "conveyors" as "heavy equipment and machinery"). More importantly, courts have routinely treated industrial warehouse conveyor belts as heavy or industrial machinery when resolving claims for product liability. See 4 Products Liability Practice Guide § 55.01 (2022) (citing fifteen cases where individuals were injured by conveyor belts at construction sites or at industrial plants).

However, apart from certain self-propelled mobile conveyors, most conveyor belts are designed to meet specific needs and are not identical. Some conveyor belts are used to serve food, like those in *kaiten-sushi*, also known as conveyor belt sushi, or provide faster transportation for pedestrians at airports and train stations. Others are employed to move grain or sand by the ton. The Occupational Safety and Health Administration acknowledges that "[m]any conveyors have different and unique features and uses, so that hazards vary due to the material conveyed, the location of the conveyor, and the proximity of the conveyor to the

---

[1] See, e.g., Recommendations to the U.S. Department of Labor for Changes to Hazardous Orders, National Institute for Occupational Safety and Health, May 3, 2002, available at https://www.cdc.gov/niosh/docs/nioshrecsdolhaz/pdfs/dol-recomm.pdf.

employees." It continues, "[c]onveyor-related injuries typically involve an employee's hands or fingers" when "cleaning and maintaining a conveyor," "reaching into a nip point to remove debris," and "allowing employee clothing to get caught" in a manner that pulls in a finger. As Amazon notes, these regulations are used largely for both construction and general industry conveyor belts. See 29 C.F.R. §§ 1910.218(j)(3), 1926.555(a)(8).

By regularly loading and using industrial conveyor belts, plaintiffs are constantly exposed to the dangers that OSHA has identified. In particular, by loading objects and necessarily monitoring the flow of object traffic, Sortation Associates must be vigilant to ensure their clothing does not get caught in a manner that could lead to severe injury. They also must be constantly aware of the machine's in-running nip points. The severe injuries caused by these types of hazards are a common source of legal actions. See, e.g., Satchi v. Rheon U.S.A., Inc., 255 F. Supp. 3d 253 (D. Mass. 2017) (decedent's clothing became entangled in a conveyor belt at a commercial bakery); Clark v. Dematic Corp., No. 14-cv-750, 2014 WL 6387166 (N.D.N.Y. Nov. 14, 2014) (plaintiff's hand became entangled in a conveyor belt system at a FedEx facility); Czerniejewski v. Steward-Glapat Corp., 236 A.D.2d 795, 796, 653 N.Y.S.2d 742 (4th Dep't 1997) (employee injured after getting his hand stuck in a the conveyor belt without turning off the power); Condit v. Lewis Refrigeration Co., 101 Wash.2d 106, 676 P.2d 466 (1984) (employee injured when her arm passed between an exposed gear and a conveyor belt).

The conveyor belts installed at an Amazon mega-warehouse and Fulfillment Center are not designed to facilitate foot traffic or serve food. This extensive transportation mechanism is used to quickly move thousands of items, some of them quite heavy, around a massive warehouse and logistics hub every single day. This makes the present conveyor belt similar in design and purpose to the "heavy machines" or "industrial machines" identified by New York

State law, 12 NYCRR §§ 23-9.3, 23-9.8, which move tons of material a day. Thus, Amazon's conveyor belts qualify as heavy machinery for purposes of Section 2-07(a)(2). See generally Olson v. A. W. Chesterton Co., 256 N.W.2d 530, 540 (N.D. 1977) (characterizing a gravel conveyor belt as "heavy machinery" for a tort claim); 4 Products Liability Practice Guide § 55.01 (2022) (stating that conveyor belts, including those used in warehouses, are "industrial machines").

Plaintiffs also argue that even if the conveyor belts at the Amazon facility are heavy machinery, Sortation Associates do not "operate" them as contemplated by the rule. Specifically, plaintiffs maintain that merely placing objects on a conveyor is not operating it because this action does not cause the conveyor belt to function, keep it in operation, turn it off and on, or repair it. I again disagree.

Amazon's job description, which is not refuted by plaintiffs' complaint, states, "you'll load conveyor belts," "transport and stage deliveries," and be required to lift up to "49 pounds." By placing objects weighing nearly 50 pounds on conveyor belts and confirming those conveyor belts successfully transport those objects to staging locations for drivers, Sortation Associates are, by definition, keeping the conveyor belt in operation. They are causing the conveyor belt to move the loaded objects from one location to another and ensuring the conveyor belt functions as designed.

### III.     Job Duties and the Immediate Risk of Death or Serious Physical Harm

In addition, the job description and actual work performed by Amazon employees on the floor of the Amazon Fulfillment Center is exactly the type contemplated by the exception in Section 2-07(a)(6). Warehouse workers are not bookkeepers, office workers, or retail salespersons. Their job requires that they move quickly and attentively across an active

8

warehouse floor, lifting heavy packages on and off moving machinery that itself could not be moved without the use of other machinery, and use conveyor belts to move objects around.

In this environment, there are a multitude of ways a marijuana-impaired employee could cause accidents resulting in personal injury or property damage.  It isn't hard to imagine an impaired employee ambling in front of a heavy moving object or carelessly allowing a clothing item to get caught in a conveyor belt.  Others could also injure themselves or cause damage to property in an effort to protect such vulnerable or at-risk employees.  Thus, a Sortation Associate's "[i]mpairment would [directly] interfere with [his] ability to take adequate care in the carrying out . . . [of] job duties and would pose an immediate risk of death or serious physical harm to the employee or to other people." 47 R.C.N.Y. § 2-07(a)(6).

Moreover, although the Court has rejected defendant's argument for purposes of a Rule 12(b)(6) motion that plaintiffs would be required to use forklifts, it is common sense to recognize that other employees are using them or similar machines.  This is, after all, a *warehouse*.  The goods and packages do not materialize in plaintiffs' hands by themselves.  There has to be a loading dock, and the packages that wind up being placed on a conveyor belt by plaintiffs would necessarily require the use of bulk moving machinery like forklifts, if for no other reason than to move groups of pallets on which packages are temporarily placed.  Amazon's goal of avoiding plaintiffs running over someone with a forklift because of their marijuana-induced inattention is no less applicable to the avoidance of plaintiffs themselves being run over because they are not paying attention to the forklift that is approaching them.

It makes perfect sense that the law would exempt such workers from a drug test prohibition, as their potential insobriety would increase the risk of injury to themselves and their co-workers.  Because of this, the reason for permitting pre-employment drug tests is self-evident.

9

It dissuades higher risk employees from applying in the first instance and removes others from the applicant pool who are more likely to come to work intoxicated or use drugs during work breaks. Cf. Skinner v. Ry. Labor Executives' Ass'n, 489 U.S. 602, 629–30 (1989) (drug testing measures help railroads protect the public by "increasing the likelihood that employees will forgo using drugs or alcohol while subject to being called for duty."); Amer. Fed. of Gov. Employees v. Cavazos, 721 F. Supp. 1361 (D.D.C. 1989) (testing Department of Education Drivers for drug use was permissible because the drivers "would come into direct contact with other drivers and pedestrians and are therefore in a position where 'even a momentary lapse of attention' could result in harm.").

## CONCLUSION

Amazon's motion to dismiss is granted.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
       April 11, 2022